| | |
|---|---|
| CHROME HEARTS LLC, a Delaware Limited Liability Company,<br><br><br>Plaintiff,<br><br><br>vs.<br><br><br>THE KOOPLES USA, INC., a Delaware Corporation; and DOES 1-10, inclusive,<br><br><br>Defendants. | Civil Action No. 1:19-cv-03263-JGK<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION TO ENFORCE PERMANENT INJUNCTION AND REQUEST FOR SANCTIONS AGAINST DEFENDANT** |

# TABLE OF CONTENTS

I.   INTRODUCTION AND RELEVANT FACTS...................................................1

II.   ARGUMENT..........................................................................................4

  A.  This Court Has the Authority to Enforce the Injunction and Contempt Order 4

  B.  Defendant Should be Held in Contempt for Violating the Permanent

Injunction ........................................................................................5

  C.  Defendant Should Be Sanctioned for its Conduct and Plaintiff Should Be

Awarded Damages .............................................................................7

  D.  Plaintiff is Entitled to Attorney's Fees as a Result of Defendant's Contempt

     10

IV.  CONCLUSION ......................................................................11

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION TO ENFORCE INJUNCTION AND REQUEST FOR SANCTIONS**

# TABLE OF AUTHORITIES

## Cases

*American Booksellers Ass'n v. Houghton Mifflin Co., Inc.*,

1998 U.S. Dist. LEXIS 4341 at \*8 (S.D.N.Y. 1998)...................................................4

*Canterbury Belts, Ltd. v. Lane Walker Rudkin, Ltd.*,

1990 U.S. Dist. LEXIS 9059 at \*28-29 (S.D.N.Y. 1990).......................................8

*CBS Broad. Inc. v. FilmOn.com, Inc.*,

814 F.3d 91 (2d Cir. 2016)...................................................................................5

*Chambers v. NASCO, Inc.*,

501 U.S. 32 (1991) ...............................................................................................4

*Eros Entm't, Inc. v. Melody Spot, L.L.C.*,

2005 U.S. Dist. LEXIS 43227 at \*20-21 (E.D.N.Y. 2005) ................................7

*Genworth Fin. Wealth Mgmt. v. McMullan*,

2012 U.S. Dist. LEXIS 200778 at \*20-24 (D. Conn. 2012)...............................4

*Howard Johnson Co. v. Khimani*,

892 F.2d 1512 (11th Cir. 1990)...........................................................................8

*McComb v. Jacksonville Paper Co.*,

336 U.S. 187 (1949) .............................................................................................7

*Mears v. Montgomery*,

535 Fed.Appx. 37 (2d Cir. 2013) .........................................................................6

*Merck Eprova AG v. Gnosis S.p.A.*,

760 F.3d 247 (2d Cir. 2014).................................................................................9

*New York State NOW v. Terry*,

952 F.Supp. 1033 (S.D.N.Y. 1997)....................................................................10

*Paramedics Electromedicina Comercial, Ltda. v. GE Med. Sys. Info. Techs., Inc.*,

369 F.3d 645 (2d Cir. 2004).................................................................................5

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION TO ENFORCE INJUNCTION AND REQUEST FOR SANCTIONS**

*Perfect Fit Industries, Inc. v. Acme Quilting Co.*,

    673 F.2d 53 (2d Cir. 1982)...................................................................................7

*Phillip Morris USA Inc. v. Los Corazones Deli Grocery, Inc.*,

    2014 U.S. Dist. LEXIS 123033 at *7-8 (S.D.N.Y. 2014).....................................7

*Safeco Ins. Co. of Am. v. M.E.S., Inc.*,

    2014 U.S. Dist. LEXIS 200886 at *12 (E.D.N.Y. 2014).....................................10

*Shillitani v. United States*,

    384 U.S. 364 (1966) ............................................................................................5

*Spallone v. United States*,

    493 U.S. 265 (1990) ............................................................................................5

*Vuitton et Fils S.A. v. Carousel Handbags*,

    592 F.2d 126 (2d Cir. 1979)................................................................................9

*Walpole Woodworkers v. Atlas Fencing*,

    218 F.Supp.2d 247 (D. Conn. 2002) ...................................................................9

*Weitzman v. Stein*,

    98 F.3d 717 (2d Cir. 1996)................................................................................10

*Z-International, Inc. v. Z Line Int'l, Inc.*,

    2005 U.S. Dist. LEXIS 13188 at *11 (S.D.N.Y. 2005).......................................7

Statutes

15 U.S.C. § 1117(a) ....................................................................................................7, 8

15 U.S.C. § 1121 .............................................................................................................2

Rules

Federal Rule of Civil Procedure 70(e)............................................................................4

iii

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION TO
ENFORCE INJUNCTION AND REQUEST FOR SANCTIONS**

<h1 style="text-align:center">MEMORANDUM OF POINTS AND AUTHORITIES</h1>

## I.    INTRODUCTION AND RELEVANT FACTS

Plaintiff Chrome Hearts LLC ("Plaintiff") brings the instant Motion against defendant The Kooples USA, Inc. ("Defendant") for its blatant disregard of the Stipulated Permanent Injunction which prohibited the offer for sale and/or sale of clothing products bearing Plaintiff's federally registered trademarks ("Accused Products").

In April 2019, Plaintiff filed an action in this Court against Defendant for federal and common law claims related to trademark infringement ("Action"). Exh. A to Declaration of Tara A. Currie ("Currie Decl."). The Action arose out of Defendant's offer for sale and/or sale of the Accused Products, which included two sweaters bearing metal buttons which were confusingly similar to Plaintiff's CH Plus trademark ("Chrome Hearts Mark"), as shown below:

| Plaintiff's Mark | Accused Products from February 2019 |
|---|---|
| CH Plus Mark |  |

Exhs. A, C. At the time Plaintiff discovered the infringement and made a purchase of the Accused Products in 2019, Defendant was selling the sweaters at approximately $320-$350 each. Currie Decl., ¶¶ 3-4; Exhs. B-D. The above

1

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION TO ENFORCE INJUNCTION AND REQUEST FOR SANCTIONS**

photos were taken in approximately February 2019. Currie Decl., ¶ 3.

The Parties reached settlement and stipulated to a Permanent Injunction; the Court issued an Order which approved the terms of the Injunction on September 22, 2020. Currie Decl, ¶¶ 5-6; Exh. E; ECF Nos. 28, 28-1.  The Injunction stated, in relevant part:

> 1. Defendant . . . [is] hereby permanently restrained and enjoined from infringing upon the Chrome Hearts Marks in Exhibit A, including but not limited to:
>
> a. manufacturing, importing, advertising, marketing, promoting, supplying, distributing, offering for sale, or selling the Accused Products or any other products which bear the Chrome Hearts Marks and/or any marks confusingly similar thereto;
> . . .
> 2.  This Court has jurisdiction over the parties herein and has jurisdiction over the subject matter hereof pursuant to 15 U.S.C. § 1121.
>
> 3. The Parties' Stipulation to and entry of this Order shall serve to bind and obligate the Parties hereto.
> . . .
> 5. The jurisdiction of this Court is retained for the purpose of enforcing or modifying the Permanent Injunction granted by this Order.

Exh. E.  The "Chrome Hearts Marks" were identified by the drawing of the CH Plus Mark shown above and its associated registration numbers and class of goods/services in an exhibit attached to the Order. Currie Decl., ¶ 6; Exh. E.  The "Accused Products" were defined as products offered for sale and/or sold by Defendant bearing unauthorized reproductions of the Chrome Hearts Marks, with pictures of the two sweaters shown above. *Id.*  Because Defendant's counsel appeared in the matter and participated in the electronic case filing system (ECF), Defendant and its counsel received notice of the Order upon its filing. Currie Decl.,

¶ 7; ECF Nos. 10, 12.

On May 11, 2022, Plaintiff discovered that Defendant relisted the exact same sweaters during a sale advertised on its website, despite being prohibited from doing so as a result of the Injunction. Currie Decl., ¶¶ 6, 8, 9; Exhs. F, G. Plaintiff was able to purchase and receive the sweaters from this sale, confirming the sweaters and hardware were identical from the sweaters which gave rise to the lawsuit. Currie Decl., ¶¶ 8-9; Exhs. F-H.  This time, the sweaters were sold at $87.50-$96 each. Currie Decl., ¶¶ 8-9; Exh. F, H.  Photographs of the sweaters sold in May 2022 are shown below:

| Plaintiff's Mark | Accused Products from May 2022 |
|---|---|
| CH Plus Mark |  |

Currie Decl., ¶¶ 8-9; Exh. G.

Therefore, Plaintiff respectfully requests that this Court grant the instant Motion and impose sanctions against Defendant for noncompliance.

/ / /

/ / /

## II. ARGUMENT

For the reasons set forth below in detail, the Court should find Defendant in contempt of the Permanent Injunction and grant the relief requested by Plaintiff under either the Court's inherent authority to enforce its orders and Federal Rule of Civil Procedure 70(e).

### A. This Court Has the Authority to Enforce the Injunction and Contempt Order

This Court adopted and entered as its own Order the Parties' Proposed Order re Permanent Injunction and Voluntary Dismissal of Defendant with Prejudice, which provides that "[t]he jurisdiction of this Court is retained for the purpose of enforcing and modifying the Permanent Injunction granted by this Order." Currie Decl., ¶¶ 5-6; Exh. E. The Order is consistent with Second Circuit authority which provides that the court issuing an injunction has jurisdiction to enforce its own injunction or order, and to impose contempt or other sanctions for violation of that order. *Genworth Fin. Wealth Mgmt. v. McMullan*, 2012 U.S. Dist. LEXIS 200778 at *20-24 (D. Conn. 2012) (citing to *American Booksellers Ass'n v. Houghton Mifflin Co., Inc.*, 1998 U.S. Dist. LEXIS 4341 at *8 (S.D.N.Y. 1998); *Zyprexa Litig.,* 474 F.Supp.2d 385, 417 (E.D.N.Y. 2007) ("The power of a court to make an order carries with it the equal power to punish for a disobedience of that order.") (citations and quotations omitted); *Ideal Toy Corp. v. Sayco Doll Corp.*, 302 F.2d 623, 625 (2d Cir. 1962); *see also Chambers v. NASCO, Inc.*, 501 U.S. 32, 43-44 (1991).

Federal Rule of Civil Procedure 70(e) also permits a court to hold a party in contempt for violating a judgment. Accordingly, whether under Rule 70(e) or the Court's inherent power to enforce its orders, this Court has complete authority to hold Defendant in contempt of the Permanent Injunction. *Spallone v. United*

*States*, 493 U.S. 265, 276 (1990); *Shillitani v. United States*, 384 U.S. 364, 370 (1966).

**B.     Defendant Should be Held in Contempt for Violating the Permanent Injunction**

A court may hold a party in contempt for failure to comply with an order if (1) the order is clear and unambiguous; (2) the proof of noncompliance is clear and convincing; and (3) the party has not diligently attempted to comply in a reasonable manner. *CBS Broad. Inc. v. FilmOn.com, Inc.*, 814 F.3d 91, 98 (2d Cir. 2016).  Willfulness of the violation does not need to be established. *Paramedics Electromedicina Comercial, Ltda. v. GE Med. Sys. Info. Techs., Inc.*, 369 F.3d 645, 655 (2d Cir. 2004).

Firstly, the terms of the Order are clear and unambiguous.  It leaves "no doubt in the minds of those to whom it was addressed . . . precisely what acts are forbidden." *CBS Broad. Inc.,* 814 F.3d at 98 (internal quotations and citations omitted).  The terms clearly state that Defendant is

> permanently restrained and enjoined from infringing upon the Chrome Hearts Marks in Exhibit A, including but not limited to:
>
> a. manufacturing, importing, advertising, marketing, promoting, supplying, distributing, **offering for sale**, or **selling** the Accused Products or any other products which bear the Chrome Hearts Marks . . .

Currie Decl., ¶ 6; Exh. E (emphasis added).  The term "Chrome Hearts Marks" were defined in Exhibit A which was attached to the Stipulation and Order Granting the Permanent Injunction. *Id*.  The Accused Products were also defined in the Stipulation and Order by showing pictures of the exact same sweaters that gave rise to the instant Motion. *Id.*  Defendant cannot possibly argue that the

Order granting the Stipulation was ambiguous when Defendant reviewed and signed the Stipulation, and the Court simply put its rubber stamp of approval on the entire Stipulation. Currie Decl., ¶¶ 5-7; Exh. E; ECF Nos. 28, 28-1.

Secondly, there is clear and convincing evidence that Defendant failed to comply with the prohibition on offering for sale and selling the Accused Products. Defendant made the calculated decision to reoffer the Accused Products during a sale event on its website despite agreeing to the terms of the Injunction. Currie Decl., ¶¶8-9; Exhs. F-G. Plaintiff's counsel was able to purchase the Accused Products from Defendant's website in May 2022, nearly two years after the Order was issued. Currie Decl., ¶¶ 8-9; Exhs. F-H. This is a straightforward violation of the prohibition on "offering for sale, or selling the Accused Products". Currie Decl., ¶ 6; Exh. E.

Thirdly, Defendant will not be able to argue that it diligently attempted to comply with the Order in a reasonable manner. Compliance means that Defendant does not offer for sale and/or sell the Accused Products again. Defendant failed to comply. Currie Decl., ¶ 6; Exh. E. Although willfulness need not be proven for a contempt motion, Defendant's willfulness is shown by the fact that the Accused Products were later offered at a sale price compared to the original price of approximately $320-350. Currie Decl., ¶¶ 3-4, 8-9; Exhs. B, D, F, H.

Notably, the Court is not required to undertake an analysis of the *Polaroid* factors for likelihood of confusion in a civil contempt proceeding seeking enforcement of an injunction against further infringement. *Mears v. Montgomery*, 535 Fed.Appx. 37, 39 (2d Cir. 2013) ("The only question at the contempt stage, therefore, is whether Appellant has violated the injunction-that is, whether he has used the . . . mark or 'any derivative or similar' mark.") (citations omitted). Here, the exact same offending hardware and sweaters were sold as before.

As each element is satisfied, this Court has the authority to find Defendant in contempt for violating the Court's Order granting the Permanent Injunction based on its terms.

**C.      Defendant Should Be Sanctioned for its Conduct and Plaintiff Should Be Awarded Damages**

In a civil contempt proceeding, the Court has broad discretion to fashion a remedy that will coerce a party's compliance with a court order or compensate the other party for any losses or damages sustained as a result of noncompliance. *McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 191 (1949); *Perfect Fit Industries, Inc. v. Acme Quilting Co.*, 673 F.2d 53, 56 (2d Cir. 1982); *Z-International, Inc. v. Z Line Int'l, Inc.*, 2005 U.S. Dist. LEXIS 13188 at *11 (S.D.N.Y. 2005).

In considering compensatory damages, the amount awarded is not always dependent on "actual pecuniary loss" and could be determined based on the profits derived by the defendant as a result of the violation. *Eros Entm't, Inc. v. Melody Spot, L.L.C.*, 2005 U.S. Dist. LEXIS 43227 at *20-21 (E.D.N.Y. 2005); *see also* 15 U.S.C. § 1117(a).  However, Plaintiff does not currently have any information relating to Defendant's profits as a result of reselling the Accused Products nor does it know how many of the Accused Products it sold. Currie Decl., ¶ 10.

In a trademark infringement action, courts have considered statutory damages under the Lanham Act where the actual damages i.e., profits, were difficult to determine, as in this case. *Phillip Morris USA Inc. v. Los Corazones Deli Grocery, Inc.*, 2014 U.S. Dist. LEXIS 123033 at *7-8 (S.D.N.Y. 2014); *see also Eros* at *22 ("The true injury to plaintiffs is that as a result of their agreement to enter into the Consent Judgment, they agreed to settle the case for the monetary equivalent of $40,000, instead of pursuing the full panoply of damages available

7

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION TO ENFORCE INJUNCTION AND REQUEST FOR SANCTIONS**

under the Copyright Act for the infringing activities of the defendants."); *Howard Johnson Co. v. Khimani*, 892 F.2d 1512, 1519 (11th Cir. 1990) (holding it was in the district court's discretion to use the Lanham Act as a guide to structuring a civil contempt sanction, including an award for the costs of the action).

The Lanham Act provides that:

> When a violation of any right of the registrant of a mark registered in the Patent and Trademark Office . . . shall have been established in any civil action arising under this Act, the plaintiff shall be entitled . . . to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action. The court shall assess such profits and damages or **cause the same to be assessed under its direction**. . . . In assessing damages the court may enter judgment, according to the circumstances of the case, for any sum above the amount found as actual damages, **not exceeding three times such amount**. If the court shall find that the amount of the recovery based on profits **is either inadequate or excessive the court may in its discretion enter judgment for such sum as the court shall find to be just**, according to the circumstances of the case.

15 U.S.C. § 1117(a) (emphasis added). Plaintiff does not yet know what profits were derived from Defendant's re-sale of the Accused Products because it has not engaged in that discovery. Currie Decl., ¶ 10. Upon discovery of the Injunction violation, Plaintiff filed and served the instant Motion. Currie Decl., ¶ 11. A lack of profit evidence does not preclude a finding of contempt; some courts have allowed a separate hearing on the issue of damages upon the discovery of such profit evidence. *See Canterbury Belts, Ltd. v. Lane Walker Rudkin, Ltd.,* 1990 U.S. Dist. LEXIS 9059 at *28-29 (S.D.N.Y. 1990) (finding defendant in contempt and requesting recommendation from the Magistrate on the proper award of damages due to plaintiff's inability to quantify its money damages); *Vuitton et Fils S.A. v.*

*Carousel Handbags*, 592 F.2d 126, 131 (2d Cir. 1979) (remanding to the lower court to allow plaintiff the opportunity to prove its damages).

As to "damages sustained by the plaintiff", while Plaintiff can provide a price range estimate of clothing products bearing a legitimate Chrome Hearts Mark, it still does not know the quantity of Accused Products re-sold by Defendant to be able to determine how much profits Plaintiff lost by Defendant's violation of the Injunction. Even with that information, the harm suffered is more than just monetary. A reasonable award would reflect the intangible benefits that accrued to Defendant, including its usurpation of Plaintiff's market share, by using a mark that is confusingly similar to the Chrome Hearts Mark. *See Merck Eprova AG v. Gnosis S.p.A.*, 760 F.3d 247, 262-63 (2d Cir. 2014) (affirming the award of enhanced damages under 15 U.S.C. § 1117(a) where plaintiff's losses were difficult to calculate). It would also take into account Defendant's willfulness in deciding to sell the Accused Products again and fixing a different price than originally offered. Such an award would also serve to deter future violations. *See Walpole Woodworkers v. Atlas Fencing*, 218 F.Supp.2d 247, 252 (D. Conn. 2002) (holding that despite the difficulty in quantifying plaintiff's lost profits and good will, plaintiff is entitled to $50,000 in damages, taking into account the need to deter future similar violations).

Therefore, Plaintiff respectfully requests that the Court find the Defendant in contempt and order a separate hearing on the issue of compensatory damages, including ordering Defendant to provide its accounting and expenses related to the re-sale of the Accused Products. Plaintiff will also submit its bill of costs.

/ / /

/ / /

/ / /

9

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION TO ENFORCE INJUNCTION AND REQUEST FOR SANCTIONS**

**D.** **Plaintiff is Entitled to Attorney's Fees as a Result of Defendant's Contempt**

The Second Circuit allows for the victim of a contempt to be awarded attorneys' fees where the conduct was found to be willful. *New York State NOW v. Terry*, 952 F.Supp. 1033, 1043-44 (S.D.N.Y. 1997); *Weitzman v. Stein*, 98 F.3d 717, 719 (2d Cir. 1996); *Safeco Ins. Co. of Am. v. M.E.S., Inc.*, 2014 U.S. Dist. LEXIS 200886 at *12 (E.D.N.Y. 2014). "A willful contempt is one where the contemnor had actual notice of the court's order, was able to comply with it, did not seek to have it modified, and did not make a good faith effort to comply." *New York State NOW*, 952 F.Supp. at 1043. Defendant's counsel appeared in the case and thus Defendant and its counsel received notice of the Court's Order via ECF. Currie Decl., ¶ 7; ECF Nos. 10, 12. As demonstrated above in Section II.B, all Defendant had to do was stop using the Chrome Hearts Mark, i.e., stop offering for sale and/or sell the Accused Products, yet it deliberately put the Accused Products back up for sale at a discounted price, thereby violating the Order. Currie Decl., ¶¶ 3-9; Exhs. B-H to Currie Decl. There is no evidence that the Defendant sought to have the Order modified.

Accordingly, attorneys' fees should be awarded as a result of Defendant's willful conduct. Plaintiff requests the Court's permission to file an application upon completion of its efforts in bringing the instant Motion to determine the reasonableness of fees sought.

/ / /

/ / /

/ / /

/ / /

/ / /

## IV.  <u>CONCLUSION</u>

For the foregoing reasons, this Court should find the Defendant in contempt for violating the Injunction and order a separate hearing on the issue of compensatory damages and attorney's fees, including ordering Defendant to provide accounting and expenses related to the re-sale of the Accused Products.

Dated:          June 8, 2022                    Respectfully Submitted,


By: */s/ Brent H. Blakely*
    Brent Blakely (BB 1966)
    1334 Parkview Avenue, Suite 280
    Manhattan Beach, California 90266
    Telephone: (310) 546-7400
    Facsimile: (310) 546-7401
    ***Attorneys for Plaintiff***
    ***Chrome Hearts LLC***

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION TO ENFORCE INJUNCTION AND REQUEST FOR SANCTIONS